**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**


| | | |
|---|---|---|
| LESSIE PICOTT, for D.P., a Minor, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 1:10CV710 |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1] | ) ) ) ) | |
| Defendant. | ) ) | |


<u>**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**</u>

Plaintiff, Lessie Picott, brought this action on behalf of her minor child, D.P., pursuant to Section 205(g) of the Social Security Act (the "Act"), as amended (42 U.S.C. § 405(g)), to obtain judicial review of a final decision of Defendant, the Commissioner of Social Security, denying Plaintiff's claim for Child Supplemental Security Income ("SSI") payments under Title XVI of the Act. The Court has before it the certified administrative record and the parties have filed cross-motions for judgment (Docket Entries 15, 17). For the reasons that follow, the Court should enter judgment for Defendant.

---

[1] Carolyn W. Colvin became Acting Commissioner of Social Security on February 14, 2013, resulting in her substitution for Michael J. Astrue as Defendant, by operation of Federal Rule of Civil Procedure 25(d).

## PROCEDURAL HISTORY

After two unsuccessful attempts (Tr. 18),[2] Plaintiff filed a third application for SSI on behalf of D.P. (Tr. 72-82). Following denial of the application initially and on reconsideration (Tr. 34-43, 45-48), Plaintiff requested a hearing de novo before an Administrative Law Judge ("ALJ") (Tr. 49). The ALJ continued the hearing to permit Plaintiff to retain an attorney and to bring her son. (Tr. 370-73.) Upon reconvening of the hearing, Plaintiff, D.P., their attorney and a medical expert appeared. (Tr. 374-401.) The ALJ thereafter ruled D.P. not disabled under the Act (Tr. 15-30) and the Appeals Council denied Plaintiff's request for review (Tr. 5-8), thereby making the ALJ's determination the Commissioner's final decision for purposes of judicial review.

In rendering this disability determination, the ALJ made the following findings later adopted by the Commissioner:

> 1. [D.P.] . . . was a preschooler on . . . the date the application was filed, and is currently a school-age child (20 CFR 416.926a(g)(2)).

> 2. [D.P.] has not engaged in substantial gainful activity at any time relevant to this decision (20 CFR 416.924(b) and 416.972).

> 3. [D.P.] has the following severe impairments: developmental delays; attention deficit hyperactivity disorder (ADHD); and a history of depression (20 CFR 416.924(c)).

> . . .

---

[2] Citations to "Tr." refer to the administrative record, which takes note of, but does not contain documents regarding, the first two applications.

4. [D.P.] does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.924, 416.925 and 416.926).

. . .

5. [D.P.] does not have an impairment or combination of impairments that functionally equals the listings (20 CFR 416.924(d) and 416.926(a)).

(Tr. 21.)

The ALJ therefore determined that D.P. did not have a "disability," as defined in the Act. (Tr. 30.)

## DISCUSSION

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of . . . review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hines, 453 F.3d at 561 (internal brackets and quotation marks omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of

-3-

more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ, as adopted by the Commissioner]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the ALJ)." Id. at 179 (internal quotation marks omitted). "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In confronting the issue so framed, the Court must note that "[a] claimant for disability benefits bears the burden of proving a disability," Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981), and a child under the age of 18 qualifies as disabled "if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional

limitation, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months," 20 C.F.R. § 416.906. In resolving such a claim, the ALJ must follow a three-step sequential evaluation process to consider whether a claimant (1) has engaged in substantial gainful activity; (2) has a severe impairment; and (3) has an impairment that meets or either medically or functionally equals a listed impairment. 20 C.F.R. § 416.924.

### Assignments of Error

The ALJ found that D.P. met the burden at step one. (Tr. 21.) At step two, the ALJ determined that D.P. suffered from three severe impairments: developmental delays, ADHD and a history of depression. (Id.) The ALJ then concluded at step three that said impairments, both alone and in combination, failed to meet, medically equal, or functionally equal a listed impairment. (Id.) Plaintiff argues that the ALJ reversibly erred by: (1) failing to sufficiently address whether D.P. met the listing applicable to ADHD (Docket Entry 16 at 12-13); (2) finding that D.P. possessed less than marked limitation in the functional domains of "Attending and Completing Tasks" (id. at 13-16) and "Acquiring and Using Information" (id. at 16-18); and (3) improperly resolving the second step of the symptom credibility analysis (id. at 18-19).

### 1. Listing 112.11 Analysis

Plaintiff first argues that the ALJ committed reversible error at step three by deciding that D.P.'s ADHD did not meet Listing 112.11, 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.11, "without

-5-

making findings that are supported by a specific weighing of the evidence." (Docket Entry 16 at 12.) According to Plaintiff, "the ALJ never actually weighed a single piece of specific evidence (regarding the ADHD listing), but simply announced his conclusion. This is legally insufficient." (Id. at 13.) Plaintiff's argument on this point falls short.

"In evaluating a claimant's impairment, an ALJ must <u>fully analyze</u> whether a claimant's impairment meets or equals a 'Listing' <u>where there is factual support that a listing could be met</u>." <u>Huntington v. Apfel</u>, 101 F. Supp. 2d 384, 390 (D. Md. 2000) (emphasis added) (citing <u>Cook v. Heckler</u>, 783 F.2d 1168, 1172 (4th Cir. 1986)); <u>see also</u> <u>Russell v. Chater</u>, No. 94-2371, 60 F.3d 824 (table), 1995 WL 417576, at *3 (4th Cir. July 7, 1995) (unpublished) ("In <u>Cook v. Heckler</u>, we remanded for further explanation because the ALJ failed to explain his conclusion that the Claimant's disabilities were not equivalent to any listed impairment. . . . <u>Cook</u>, however, does not establish an inflexible rule requiring an exhaustive point-by-point discussion in all cases." (internal citation omitted)). Plaintiff's brief includes a lengthy "STATEMENT OF FACTS" (Docket Entry 16 at 1-12), but, in the "ARGUMENT" section, under the heading "The ALJ erred by failing to sufficiently consider whether DP met Listing 112.11, ADHD" (<u>id.</u> at 12), said brief does not identify <u>any</u> evidence demonstrating that the ALJ could have found D.P.'s ADHD to have met Listing 112.11 (<u>id.</u> at 12-13). This approach directly conflicts with the Court's directive that "[a] recitation of the general facts of the

case is unnecessary. Rather, the pertinent facts should be identified in the argument section." (Docket Entry 10 at 1; see also id. ("[E]ach issue should be discussed in a separate section which sets out the argument for each of the issues with page citation to the record for the evidence that supports the issue . . . .").)[3] In light of this material deficiency, the Court could decline to review this assignment of error. See Marrs v. Commissioner of Soc. Sec., No. 3:12CV195, 2013 WL 3337370, at *4 (S.D. Ohio July 2, 2013) (unpublished) ("[C]ounsel fails to identify a single page of medical evidence in support of Plaintiff's arguments that the ALJ erred in . . . finding Plaintiff did not meet or equal the criteria of Listing § 12.04 . . . . Given this lack of specificity, the [c]ourt has grounds to strike Plaintiff's Statement of Errors . . . ."), recommendation adopted, 2013 WL 3872079 (S.D. Ohio July 25, 2013) (unpublished).

To the extent the Court opts to review this matter further, the record confirms the absence of factual support sufficient to have required the ALJ to document his rationale for concluding that D.P. did not meet Listing 112.11, as well as the presence of substantial evidence establishing that the ALJ properly concluded that D.P. did not meet Listing 112.11. To meet Listing 112.11,

---

[3] "[The] notabl[e] absen[ce] from [Plaintiff's] brief[] . . . [of] any meaningful contention that the ALJ's step-three determination is unsupported by substantial evidence," Russell, 1995 WL 417576, at *3, also renders "the need for a full explanation [by the ALJ] questionable at best because [it means that Plaintiff] does not take issue with the *substance* of the ALJ's step-three analysis," id. (emphasis in original).

Plaintiff first must prove that D.P.'s ADHD "satisfies the diagnostic description in the introductory paragraph," 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00A, which requires "[m]edically documented findings of all three of the following: [m]arked inattention; and [m]arked impulsiveness; and [m]arked hyperactivity." Id., § 112.11A (internal numbers omitted) (emphasis added).[4] Plaintiff then must establish "at least two of the following: [m]arked impairment in age-appropriate cognitive/ communicative function, documented by medical findings . . .; or [m]arked impairment in age-appropriate social functioning, documented by history and medical findings . . .; or [m]arked impairment in age-appropriate personal functioning, documented by history and medical findings . . .; or [m]arked difficulties in maintaining concentration, persistence, or pace." Id., § 112.02B2 (internal letters omitted); see also id., § 112.11B (incorporating Section 112.02B2).

The record reflects that D.P. had received a diagnosis of ADHD (Tr. 264),[5] but that the state agency consultants and the medical

---

[4] "Marked" in this context "means more than moderate but less that extreme. A marked limitation may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based on age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00C.

[5] "A diagnosis of a listed impairment is not sufficient." Turner ex rel. BDT v. Commissioner of Soc. Sec., No. 6:10CV1497-Orl-GJK, 2012 WL 1004841, at *15 n.16 (M.D. Fla. Mar. 26, 2012) (unpublished).

expert at the hearing all had concluded that D.P.'s ADHD did not meet or medically equal the criteria of Listing 112.11. (Tr. 25; see also Tr. 274-79, 284-89, 394.) Further, the ALJ correctly recognized that no medical source of record found that D.P.'s ADHD met or medically equaled Listing 112.11's requirements. (Tr. 24-25; see also Docket Entry 16 at 1-13 (setting out Plaintiff's "STATEMENT OF FACTS" and "ARGUMENT" that "ALJ erred by failing to sufficiently consider whether DP met Listing 112.11" without pointing to any medical source evidence indicating that D.P. met or medically equaled the elements of Listing 112.11).) Under these circumstances, Plaintiff's instant assignment of error falls short as a matter of law in that both the ALJ had no obligation to provide detailed support for the finding that D.P. failed to meet Listing 112.11 and any insufficiency of explanation resulted in no prejudice because the record lacks any evidence from which the ALJ could have concluded that D.P. satisfied Listing 112.11.

As another court observed in an analogous situation:

> [I]t is the burden of the plaintiff challenging the commissioner's decision to identify evidence in the record that, if properly considered, could support a conclusion that the claimant's impairments do meet or medically equal a given Listing. . . . Listing 112.11, ADHD, requires medically documented findings of all of the following: (i) marked inattention, (ii) marked impulsiveness; and (iii) marked hyperactivity, and satisfaction of the B criteria as specified in Listing 112.04. The plaintiff has not identified in her statement of errors the necessary medical evidence in the record for each of the[se] criteria . . . . In the absence of such evidence, the administrative law judge's failure to provide an adequate analysis cannot provide grounds for remand.

-9-

Adams ex rel. J.A. v. Barnhart, No. 05-134-B-W, 2005 WL 3832408, at
*2-3 (D. Me. Mar. 6, 2005) (unpublished) (internal citation and
footnote omitted)), recommendation adopted, 2006 WL 839489 (D. Me.
Mar. 24, 2006) (unpublished); see also Turner ex rel. BDT v.
Commissioner of Soc. Sec., No. 6:10CV1497-Orl-GJK, 2012 WL 1004841,
at *15 (M.D. Fla. Mar. 26, 2012) (unpublished) ("To meet or
medically equal Listing 112.11 for ADHD, a claimant must present
medically documented findings of marked inattention, impulsiveness,
and hyperactivity. . . . [N]one of the medical professionals who
treated or examined Claimant, or those medical professionals who
reviewed the record, opined that Claimant meets or medically equals
a listing.  Nor do the medical records collectively contain medical
findings of marked inattention, impulsivity and hyperactivity.
While the record clearly demonstrates that Claimant has problems
with inattention, impulsivity, and hyperactivity, there are no
medically documented findings or opinions demonstrating that those
problems meet the severity requirements of Listing 112.11.
Accordingly, the Court finds that substantial evidence supports the
ALJ's finding that Claimant's severe impairments do not meet or
medically equal any listing." (internal citations, emphasis,
footnote, and quotation marks omitted); Green ex rel. D.D.G. v.
Astrue, Civil Action No. 10-00610-KD-B, 2012 WL 1014751, at *9
(S.D. Ala. Mar. 7, 2012) (unpublished) ("[N]either [D.D.G.'s
treating psychologist] nor any other medical doctor opined that
D.D.G. met Listing 112.11, which requires medically documented
findings of marked inattention, marked impulsiveness and marked

hyperactivity and at least 2 of the age-group criteria located in paragraph B2 of 112.02. . . . [W]hile [his treating psychologist] has repeatedly diagnosed D.D.G. with . . . ADHD . . ., neither his [treating psychologist's] letter nor completed assessment form contains a finding that D.D.G. has marked impulsiveness and marked hyperactivity. . . . Thus, contrary to Plaintiff's contention, the ALJ did not err in finding that D.D.G.'s ADHD does not meet or equal Listing 112.11 because the record does not contain medically documented findings of marked limitations in all three required categories during the current period of adjudication."), recommendation adopted, 2012 WL 996107 (S.D. Ala. Mar. 23, 2012) (unpublished); J.H.R. ex rel. Radford v. Astrue, No. 1:07CV1584-DFH-DMI, 2009 WL 692211, at *6 (S.D. Ind. Mar. 13, 2009) (unpublished) ("Listing 112.11 requires medically documented findings of marked inattention, marked impulsiveness, and marked hyperactivity. . . . The ALJ's determination that JHR did not meet Listing 112.11 was not reversible error. . . . No medical findings in the record state that JHR met any listing. The only medical opinions that discussed listings concluded that JHR met no listings. . . . Under these circumstances, the ALJ was entitled to rely on th[ose] opinions . . . . JHR's laundry listing of evidence is futile because none of the evidence establishes that he met any listing. The evidence establishes that he had ADHD and that he received special education supports, but these points are not in dispute. [The medical expert at the hearing] reviewed the record and determined that JHR did not meet a listing. No other doctor

has disagreed.  The ALJ did not err in concluding that JHR did not meet Listing 112.11.").

Alternatively, to the extent circumstances obliged the ALJ to provide a fulsome explanation as to why D.P. failed to meet Listing 112.11, the ALJ satisfied that burden.  First, the ALJ's decision states:

> [D.P.]'s ADHD . . . ha[s] . . . not resulted in marked limitation in two areas of age-appropriate functioning as required for th[is] condition[] to meet the relevant criteria in Listing[] . . . 112.11 (with reference to Listing 112.02B).  [D.P.]'s condition[] [is] not manifested by other clinical findings indicating a level of severity comparable to the criteria of the relevant Listing[] and, therefore, his condition[] cannot be found to medically equal the criteria of the Listing of Impairments.

(Tr. 21.)  The ALJ's decision then reviews information from D.P.'s medical and school records, as well as hearing testimony (see Tr. 22-25), and sets out a detailed "domain analysis" (see Tr. 22-30).[6]

Although the ALJ's analysis at step three does not cite to specific evidence supporting the conclusion that D.P.'s ADHD fails to meet or medically equal Listing 112.11, the ALJ's subsequent discussion of the record in connection with the domain analysis makes clear for purposes of judicial review that substantial evidence supports the ALJ's finding at step three and the law

---

[6] "Domain analysis considers the child's age-appropriate functioning in relation to:  (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving around and manipulating objects; (5) caring for oneself; and (6) health and physical well being."  Neal ex rel. Walker v. Barnhart, 405 F.3d 685, 689 (8th Cir. 2005).  An ALJ must conduct such analysis to decide if an impairment that fails to meet or medically equal a listing nonetheless causes "limitations that functionally equal the listings," 20 C.F.R. § 416.926a(a).

requires nothing more. See Smith v. Astrue, 457 F. App'x 326, 328
(4th Cir. 2011) (concluding that, despite ALJ's "cursory"
explanation at step three, ALJ's analysis at subsequent steps
sustained step three determination); McCartney v. Apfel, 28 F.
App'x 277, 279-80 (4th Cir. 2002) (rejecting challenge to ALJ's
step three analysis for lack of sufficient detail where later
discussion in administrative ruling adequately supported finding at
step three and stating "that the ALJ need only review medical
evidence once in his decision"); Kiernan v. Astrue, No. 3:12CV459-
HEH, 2013 WL 2323125, at *5 (E.D. Va. May 28, 2013) (unpublished)
(observing that, "[w]here the ALJ analyzes a claimant's medical
evidence in one part of his decision, there is no requirement that
he rehash that discussion in his Step 3 analysis").

Plaintiff's citation to Huffman v. Astrue, 290 F. App'x 87, 89
(10th Cir. 2008) (see Docket Entry 16 at 12-13), does not warrant
a different conclusion. In that case, the ALJ ruled that the child
claimant's ADHD did not meet or medically equal a listing without
citing specific evidence. Huffman, 290 F. App'x at 89. The
Commissioner argued that the ALJ's detailed discussion of the
record while analyzing the six domains of functional equivalency
"saved" the step three finding. Id. The Tenth Circuit disagreed,
relying in large part on this language in the Federal Register:
"[the six] domains are specifically designed for determining
functional equivalence and are completely delinked from the mental
disorders and other listings." Id. (citing 65 Fed. Reg. 54746,

54755 (Sept. 11, 2000)).  The *Huffman* court then reversed the ALJ's step three ruling as "beyond meaningful judicial review."  Id.

In light of the Fourth Circuit authority cited above approving of reliance on an ALJ's record review at later stages for purposes of assessing the sufficiency of a step three ruling, the Court should decline to give *Huffman* any weight.  Further, in a subsequently decided case from a district court within *Huffman*'s (Tenth) Circuit, Johnson v. Colvin, No. 12-CV-77-FHM, 2013 WL 3216064 (N.D. Okla. Jun. 24, 2013) (unpublished), the court carefully analyzed *Huffman* and persuasively explained why courts should not apply *Huffman*'s reasoning as Plaintiff here suggests:

> At first blush, the language in *Huffman* appears to be on point.  However, this court does not read that unpublished decision as establishing a rule that the ALJ's failure to fully discuss the listings in a child's disability case can never be overcome by a thorough analysis of whether the child meets the functional equivalence of a listing.  Such a rule would be contrary to the Tenth Circuit's decision in [published cases declining to order] . . . unwarranted remands where, although the ALJ's discussion of the listings may be lacking, the factually substantiated findings in the remainder of the decision alleviate[] any concern that a claimant might have been adjudged disabled at step three.  Further, the language the *Huffman* Court cited from the Federal Register does not establish, or even suggest, such a rule.
>
> Contrary to the *Huffman* Court's statement, the language that the six domains to be considered for determining functional equivalence to a listing are "completely delinked" from the listings does not appear in the Commissioner's rules.  That language appears in an explanatory section outlining changes that were enacted to 20 C.F.R. § 416.926a (functional equivalence for children) after notice and comment.  The quoted section of the Federal Register explains that the final rules were simplified so adjudicators would no longer have to refer to any of the listings when deciding functional equivalence.  Use of the term "delinked" in the

-14-

> explanatory section does not purport to affect the scope
> or manner of judicial review. The "delinking" spoken of
> appears in 20 C.F.R. § 416.926a(d), "[w]e will not
> compare your functioning to the requirements of any
> specific listing." That language simply cannot be
> interpreted to alter judicial review.

Johnson, 2013 WL 3216064, at *4; see also Fischer-Ross v. Barnhart,
431 F.3d 729, 734 (10th Cir. 2005) (holding "remand for a more
thorough discussion of the listings" unnecessary "when confirmed or
unchallenged findings made elsewhere in the ALJ's decision confirm
the step three determination under review"); Rice v. Barnhart, 384
F.3d 363, 370 n.5 (7th Cir. 2004) ("Because it is proper to read
the ALJ's decision as a whole, and because it would be a needless
formality to have the ALJ repeat substantially similar factual
analyses at both steps three and five, we consider the ALJ's
treatment of the record evidence in support of both his conclusions
at steps three and five." (internal citation omitted)).

In sum, the Court should reject Plaintiff's first assignment
of error as meritless.

## 2. Domain Analysis

Plaintiff's second and third assignments of error seek
reversal of the ALJ's disability determination on the ground that
the ALJ reached conclusions unsupported by substantial evidence in
connection with the "domain analysis" (i.e., the evaluation of
whether D.P. had impairments that, although insufficient to meet a
listing, functionally equaled a listing, see 20 C.F.R. §
416.926a(a)). (See Docket Entry 16 at 13-18.) A child's
impairments functionally equal a listing if the child has "'marked'

limitations in two domains of functioning or an 'extreme'
limitation in one domain." 20 C.F.R. § 416.926a(a).[7] In this
context, the regulations identify these six domains of functioning:
"(i) Acquiring and using information; (ii) Attending and completing
tasks; (iii) Interacting and relating with others; (iv) Moving
about and manipulating objects; (v) Caring for [one]self; and (vi)
Health and physical well-being." 20 C.F.R. § 416.926a(b)(1).

Here, the ALJ found that D.P. had a "marked" limitation in
Interacting and Relating with Others, but "less than marked"
limitations in Acquiring and Using Information, Attending and
Completing Tasks, Moving About and Manipulating Objects, and Caring
for Self, as well as no limitation in Health and Physical Well-
Being. (See Tr. 22-30.) Plaintiff contends that the ALJ
reversibly erred by finding D.P.'s limitations in the domains of
Attending and Completing Tasks and Acquiring and Using Information
"less than marked." (Docket Entry 16 at 13-18.) A careful review
of the record confirms that substantial evidence supports the ALJ's
decision with respect to these matters.

D.P.'s limitation in Attending and Completing Tasks presents
the closer question. As the ALJ noted:

> This domain considers how well a child is able to focus
> and maintain attention, and how well he is able to begin,
> carry through, and finish activities, including the pace

---

[7] A "marked" limitation "interferes seriously with [a child's]
ability to independently initiate, sustain, or complete
activities." 20 C.F.R. § 416.926a(e)(2)(i) (emphasis added).
Plaintiff does not contend that D.P. has an "extreme" limitation in
any domain. (See Docket Entry 16 at 13-18.)

at which he performs activities and the ease of changing activities[.]  20 C.F.R. 416.926a(h).

. . . .

Some examples of difficulty children could have in attending and completing tasks are: (i) is easily startled, distracted, or over-reactive to sounds, sights, movements, or touch; (ii) is slow to focus on, or fails to complete, activities of interest (e.g., games or art projects); (iii) repeatedly becomes side-tracked from activities or frequently interrupts others; (iv) is easily frustrated and gives up on tasks, including ones he is capable of completing; or (v) requires extra supervision to remain engaged in an activity.

(Tr. 26-27.)

The record reflects that D.P. suffers some difficulty in this domain.  For example, school records document D.P.'s inattention and difficulty focusing in larger, group settings.  (Tr. 116, 117, 125, 132, 162, 187, 194, 195, 213, 215, 218-22, 332, 338-39.) D.P.'s preschool teacher reported D.P.'s "difficulties focusing on one activity without being distracted by his surroundings" and noted that it was "challenging for him to attend to task[s] without being distracted."  (Tr. 116.)  D.P.'s kindergarten teacher stated that D.P. had "difficulty following directions, attending to task, respecting personal space, and completing his modified work."  (Tr. 195.)  Similarly, D.P.'s teacher for both first and second grade observed that D.P. "is easily influenced by others and can become extremely active when he is around other active children" and that [h]e does have difficulties completing his work because he is easily distracted by his classmates."  (Tr. 213; see also Tr. 215.) However, "having a difficulty in a functional area does not mean the limitation is marked or extreme."  20 C.F.R. § 416.926a(b)(1).

Notably, numerous teachers and evaluators reported that when D.P. properly took his medication or participated in smaller, more structured activities, he maintained his attention and completed assigned tasks. (Tr. 145, 213, 215, 221, 228, 332, 333, 338, 339, 341.) Moreover, the medical expert at the hearing and the state agency consultants at the reconsideration stage all found less than marked limitation in this domain. (Tr. 284-89, 394.)[8] Such opinion evidence supports the ALJ's finding. See, e.g., Williams ex rel. R.M. v. Astrue, No. 1:11CV2135, 2012 WL 3283427, at *8 (N.D. Ohio Aug. 10, 2012) (unpublished) (describing state agency psychologist's "opinion that the claimant was less than markedly limited in attending and completing tasks . . . [a]s medical expert opinion evidence upon which the ALJ was permitted to rely") (citing SSR 96-6p, 1996 WL 374180, at *2). Under these circumstances, substantial evidence supports the ALJ's finding that D.P. suffers less than marked limitation in the functional equivalence domain of Attending and Completing Tasks.

The same holds true for the ALJ's conclusions regarding the domain of Acquiring and Using Information. Plaintiff describes the ALJ's two reasons for finding less than marked limitation in this domain as follows: (1) D.P. remained in a regular classroom and passed all of his grades; and (2) D.P.'s problems in school arose

---

[8] The medical expert opined that D.P.'s limitation in this domain qualified as marked when he did not take his medication. (Tr. 394.) However, because the record does not demonstrate that D.P. consistently failed to take his medication, the ALJ did not err in concluding that the expert ultimately found a less than marked limitation in this domain. (Tr. 25.)

more from his behavioral problems than cognitive impairment. (Docket Entry 16 at 16-18; see also Tr. 26.) In challenging this aspect of the ALJ's decision, Plaintiff claims that D.P. was "not *really* in a regular class" because he needed occupational therapy and special education in reading, writing and math. (Id. at 17.) Further, Plaintiff asserts that the "bare fact" that D.P. passed all his grades does not suffice because the ALJ failed to consider whether D.P. was "*socially* promoted." (Id.) Plaintiff also attacks as "irrelevant" the view that "D.P.'s limitations are behavioral rather than cognitive" because, "if a child is markedly limited in ability to acquire and use information, that is that." (Id.) Plaintiff's contentions fall short for several reasons.

First, Plaintiff misses the mark by arguing that D.P. was "not *really* in a regular class." (Id.) The ALJ acknowledged that D.P. received speech and occupational therapy, as well as special education in reading, writing and math (Tr. 22-24); however, the ALJ also appropriately observed that D.P.'s limitations did not require his placement in a special classroom full time (Tr. 24, 26). The degree to which a child needs special education clearly bears on the assessment of the child's degree of limitation in Acquiring and Using Information. (See, e.g., Tr. 396 (documenting medical expert's emphasis on fact that D.P. did not require an isolated classroom because of his ADHD).)[9] Moreover, Plaintiff has

---

[9] The fact that a child receives some special education services and performed below grade level does not require a finding of marked limitation in the functional equivalence domain of
(continued...)

cited no record support for his speculative assertion that D.P.'s teachers may have "socially promoted" him. (Docket Entry 16 at 17.) The ALJ did not reversibly err by failing to consider a matter for which no evidence existed.

Plaintiff's argument regarding the ALJ's behavioral/cognitive distinction similarly fails. The ALJ did remark that "[the medical expert] noted that [D.P.]'s problems in school are more related to his behavioral problems than to impairment in cognition." (Tr. 26; see also Tr. 394.) In so doing, however, the ALJ did not conclude that D.P.'s ability to acquire and to use information qualified as markedly limited, but then discount that conclusion because such limitation arose from behavioral issues. (See Tr. 26.) Rather, the ALJ found that D.P. functioned in the low average range of cognitive functioning (which translated to a less than marked limitation, see, e.g., Layton, 2013 WL 5372798, at *12) and agreed with the medical expert that D.P.'s behavioral problems remained his most significant area of difficulty. (See id.) Consistent with that analysis and evidence, the ALJ found that D.P. had marked limitation in the functional equivalence domain of Interacting and Relating with Others due to "persistent behavioral problems." (Tr. 28.) The ALJ committed no error in this regard.

Finally, substantial evidence supports the ALJ's conclusion that D.P.'s limitation in the functional equivalence domain of

---

[9](...continued)
Acquiring and Using Information. See, e.g., J.H.R., 2009 WL 692211, at *7.

Acquiring and Using Information remained less than marked. Significantly, the record evidence demonstrates that D.P.'s cognitive abilities improved over time. (Tr. 102, 116, 125, 144, 213, 215, 227.) Moreover, neither the state agency consultants nor the medical expert found marked limitation in this domain. (Tr. 274-79, 284-89, 394.) The record thus does not compel a finding that D.P. suffered a marked limitation in Acquiring and Using Information. See, e.g., Adams, 2005 WL 3832408, at *3 n.4 ("[T]wo state-agency psychologists found no limitation or less than marked limitations in these domains . . . . The administrative law judge was entitled to rely on the medical evidence provided by the state-agency psychologists." (internal citations omitted)).

In sum, Plaintiff's challenge to the ALJ's domain analysis does not warrant reversal.

### 3. Symptom Credibility Analysis

In her final assignment of error, Plaintiff asserts that the ALJ mistakenly ruled against Plaintiff at the second step of the symptom credibility analysis set forth in Craig because the ALJ failed to recognize the significance of his favorable finding at the first step of the Craig analysis. (Docket Entry 16 at 18-19.) More specifically, Plaintiff claims that the ALJ treated step one of the Craig analysis as a de minimis threshold requiring merely a showing of "some" pain or symptoms. (Id.) Plaintiff argues that Craig requires the ALJ to find that D.P. suffers from "a medically determinable impairment which could reasonably be expected to cause not just [symptoms], or some [symptoms], or [symptoms] of some kind

of severity, but the [symptoms] [D.P.] alleges []he suffers." (_Id._ at 18 (citing _Craig_, 76 F.3d at 594).) According to Plaintiff, pursuant to the holding in _Craig_, "the testimony of a claimant who passes Step One is entitled to great weight." (Docket Entry 16 at 19.) Plaintiff's arguments on these fronts misinterpret the ALJ's decision and misread _Craig_.

The Social Security Administration's _Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements_, as applied by the Fourth Circuit in _Craig_, 76 F.3d at 594-95, provides a two-part test for evaluating a claimant's symptom descriptions. "First, there must be objective medical evidence showing 'the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged.'" _Craig_, 76 F.3d at 594 (quoting 20 C.F.R. § 404.1529(b)). Upon satisfaction of part one by the claimant, the analysis proceeds to part two, which requires an evaluation of the intensity and persistence of the claimant's reported symptoms and the extent to which it affects the claimant's functioning. _See Craig_, 76 F.3d at 595. In making this evaluation, the fact-finder:

> must take into account not only the claimant's statements about her pain, but also all the available evidence, including the claimant's medical history, medical signs, and laboratory findings, any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.), and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily

activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Id. (internal citations and quotation marks omitted).

Here, contrary to Plaintiff's assertion, the ALJ found as to part one of the inquiry that D.P. had medically determinable impairments that reasonably could have produced the <u>alleged</u> symptoms. (Tr. 24.) Thus, the ALJ did not minimize the nature of the finding at part one in any respect. Further, contrary to Plaintiff's argument, <u>Craig</u> does not recognize a "great weight" rule which would give a "claimant a presumption of credibility at step two based upon a successful showing at step one." <u>Smith v. Astrue</u>, 457 F. App'x 326, 329 (4th Cir. 2011); <u>accord</u> <u>Felton-Miller v. Astrue</u>, 459 F. App'x 226, 229 (4th Cir. 2011).

At part two of the <u>Craig</u> analysis, the ALJ found that "The statements concerning the intensity, persistence, and limiting effects of [D.P.'s] symptoms [we]re not entirely credible." (Tr. 24.) In making that finding, the ALJ provided the following analysis:

> [D.P.]'s developmental delays have been successfully addressed with therapy. His cognitive functioning is average, his fine motor function is normal, and his adaptive functioning is also within normal limits. His speech is generally understandable and his speech impairment does not interfere with his academic progress. [D.P.]'s ADHD has generally been well-controlled with medication. His depressive disorder is of recent onset and may not meet the duration requirement of section 20 CFR 416.909 of the regulations. [D.P.] has remained in a regular class placement and he has been regularly promoted. These factors indicate that the allegations regarding [D.P.]'s functional limitations are not fully credible.

(<u>Id.</u>)  This analysis comports with <u>Craig</u> and the Commissioner's regulations.  The ALJ thus properly evaluated D.P.'s symptoms under <u>Craig</u> and substantial evidence supports the ALJ's findings.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision finding no disability be affirmed, Defendant's motion for judgment on the pleadings (Docket Entry 17) be granted, and Plaintiff's motion for judgment on the pleadings (Docket Entry 15) be denied.

<u>/s/ L. Patrick Auld</u>
**L. Patrick Auld**
**United States Magistrate Judge**

January 21, 2014